## Cox *v.* State.*

### (Division B.    Feb. 8, 1926.)

[107 So. 7.   No. 25075.]

1. HOMICIDE.   *Instruction, defining manslaughter, held reversible error.*

   An instruction for the state, which defines manslaughter as "the killing of a human being without malice, with a deadly weapon, in the heat of passion, without authority of law, in necessary self-defense," constitutes reversible error.

2. CRIMINAL LAW.   *Instruction marked "given" or "refused" by court, and filed by clerk, must be treated as if specific objection and exception was taken thereto at time of giving thereof.*

   Under section 577, Hemingway's Code (section 793, Code of 1906), an instruction marked "given" or "refused" by the court, and filed by the clerk, must be treated as though specific objection and exception was taken thereto at the time of the giving thereof.

*Corpus Juris-Cyc. References; Criminal Law, 17 C. J., p. 120, n. 67; Homicide, 30 C. J., p. 445, n. 24.

APPEAL from circuit court of Panola county, second district.

HON. GREEK L. RICE, Judge.

Gussie Cox was convicted of manslaughter, and she appeals.   Reversed and remanded.

*Jas. B. Boyles,* for appellant.

The latter part of this instruction is entirely wrong. Manslaughter never was a killing in necessary self-defense and it is not so defined by our statute. The latter part of this instruction should read "without authority of law and not in necessary self-defense." I submit that the omission of the word "not" in the last clause of this instruction makes it fatally defective. Section 966, Hemingway's Code, section 1236, Code of 1906; Section 968, Hemingway's Code, section, 1238, Code of 1906; *Rutherford* v. *State,* 100 Miss. 832, 57 So. 224; *Ivy* v. *State,* 84 Miss. 264, 36 So. 265.

For the court to charge that manslaughter was a killing in necessary self-defense, omitting the word "not" which was required by the statute, was simply telling the jury that notwithstanding the appellant had acted in self-defense and her theory was acceptable to the jury, it was the duty of the jury to convict the appellant of manslaughter if she did act in necessary self-defense.

*J. L. Byrd,* Assistant Attorney-General, for the state.

We submit that the circuit court will be presumed to have given the instruction with the word "not" in it, and especially is this true when we read the instruction given at the request of the defendant wherein the jury was told that they could acquit if they believed that the killing was done in necessary self-defense. When we construe the instructions as a whole, the instruction on manslaughter given at the request of the state is not a peremptory instruction and should be read in the light of the facts and circumstances; and we submit than when it is so read, the court will be driven to the conclusion that the word "not" was in the original instruction, but by a clerical error the same was left out of the instruction when copied in the record for the supreme court.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was indicted for murder for the killing of her husband, and convicted of manslaughter. There were no eyewitnesses to the killing, except the defendant and her small child, whose testimony, if believed, made a case of self-defense. However, when the officers came to make an arrest, the appellant made statements to them as to how the matter occurred at variance with her testimony, which statements would warrant the conviction of the appellant, if believed, by the jury.

We regard the evidence as being very close. The state procured an instruction on manslaughter, which instruction, as shown in the record, reads as follows:

"The court instructs the jury for the state that manslaughter is the killing of a human being without malice, with a deadly weapon, in the heat of passion, without authority of law, and in necessary self-defense."

This instruction is marked "filed" by the clerk, and has been assigned for error by the appellant.

When the record reached here, the attorney-general caused a writ of *certiorari* to be issued to the clerk below to certify a true transcript of the instruction given at the request of the state, above set forth. The clerk made the following answer to the *certiorari*:

"I hereby certify that I copied the record in the case of the above named Gussie Cox now on appeal in the supreme court, and I tried to copy it as it was received by me. Of course, I cannot definitely say that the particular word 'not' was in or out of the instruction when I copied it. Not being a lawyer, I would not have noticed it in either event. When this matter was first called to my attention by the attorney-general's office, I went immediately and got this file of papers, and it so happened that this was the only paper missing from the file. I cannot say what became of the instruction. All the papers are in the file; this one is missing."

Attached to this certificate of the clerk is a statement by the circuit judge, in which he says: "It would be im-

141 Miss.—39.

possible for me to say positively that the word 'not' was in the instruction at the time it was given by me, but I am unable to see how on earth this could have gotten by me, or how the district attorney could have read it without discovering the omission. I am advised that this particular instruction is now missing from the file, and, of course, there is no way to be positive about it.''

The district attorney also signed a statement, which is attached to the circuit clerks answer to the *certiorari,* as follows:

''I tried the case of the *State* v. *Gussie Cox* on appeal to the supreme court from Panola county. Along with other instructions asked for by the state was an instruction for manslaughter. My attention has been called to the copy of the record in the case in which the word 'not' in the manslaughter instruction does not appear in the copy. I cannot at this time definitely state that I recall the word 'not' to have been in the instruction, but I do say most positively that I wrote the instruction myself, submitted it to the judge, who read it, and then I read the instruction to the jury, and, in my opinion, it would have been impossible for an error of this kind to have escaped my attention. I frequently submit cases to juries without argument, but never fail to read the instructions. I do not know why this instruction, and only this one, should be missing from the file, and shall believe the word 'not' to be in the instruction until it is produced and I see it myself.''

The clerk certified that the original record was a true copy, and all the papers in the proceeding of the case. Section 577, Hemingway's Code (section 793, Code of 1906), provides:

''All instructions asked by either party must be in writing, and all alterations or modifications of instructions given by the court or refused shall be in writing, and those given may be taken out by the jury on its retirement. The clerk, before they are read or given to the jury, shall mark all instructions asked by either party, or given by the court, as being 'given' or 'refused,' as

the case may be, and all instructions so marked shall be a part of the record, on appeal, without a bill of exception.''

Under this statute, we are to treat the instruction just as though it was objected to and exception taken at the time it was marked ''given'' by the court. There is no showing with any certainty that the word ''not'' was actually in the instruction at the time it was given by the court and marked ''filed'' by the clerk.

Reluctant as we are to reverse a case for errors of this kind, we are compelled to do so because the instruction, as contained in the record, is clearly erroneous and prejudicial. No steps have been taken to restore the lost instruction under the statute, and, on the certificates before us, it is improbable such proceedings would result in anything other than delay of the case. The judgment of the court will therefore be reversed, and the cause remanded.

*Reversed and remanded.*